UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABDUL-JABBAR WEBSTER, | |
| Plaintiff, | Civil Action No. 13-1171 (ES) (MAH) |
| v. | OPINION |
| POLICE OFFICER PAUL WOJTOWICZ AND JESSE D. HILLBURN, | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

This action arises out of *pro se* Plaintiff Abdul-Jabbar Webster's ("Webster") Complaint alleging slander, false arrest, unreasonable search, excessive force, fabrication of evidence, and violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights by police officers Paul Wojtowicz ("Officer Wojtowicz") and Jesse D. Hillburn ("Officer Hillburn") (collectively, "Defendants" or the "Officers"). The Court has jurisdiction under 28 U.S.C. § 1331. The Officers moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. (D.E. No. 53). Having considered the parties' submissions in support of and in opposition to the instant motion, the Court decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court GRANTS-in-part the Officers' motion for summary judgment.

I. **BACKGROUND**[1]

The Officers are employed by the Jersey City Police Department. (SMF ¶ 12). On April 22, 2011, they observed Webster engage in suspected drug activity for nearly two hours. (D.E. No. 53-4, ("Investigation Report") at 2-3). As a result of their surveillance, Officer Wojtowicz approached Webster, who allegedly "struck [him] with a closed fist in the left shoulder" and continued to resist arrest. (*Id.* at 3). Officer Wojtowicz then "struck Webster with a closed fist" and handcuffed him with Officer Hillburn's assistance. (*Id.*). According to the Investigation Report, a search incident to arrest uncovered narcotics. (*Id.* at 3-4).

Webster was subsequently charged with (i) possession of a controlled dangerous substance (i.e., heroin); (ii) possession with intent to dispense or distribute heroin; (iii) possession with intent to dispense or distribute heroin within 1,000 feet of a school; (iv) possession with intent to dispense or distribute heroin within 500 feet of a public housing facility; (v) resisting arrest; (vi) obstructing the administration of law; and (vii) aggravated assault. (SMF ¶ 1; D.E. No. 53-5, ("Indictment") at 2-3). After a jury trial in the Superior Court of New Jersey, Hudson County, Webster was convicted of three counts: (i) possession of a controlled dangerous substance; (ii) possession with intent to dispense or distribute a controlled dangerous substance; and (iii) possession with intent to dispense or distribute a controlled dangerous substance within 1000 feet of school property. (SMF ¶ 2; D.E. No. 53-6, ("Verdict Sheet") at 2-3). The State voluntarily dismissed the charge of possession with intent to dispense or distribute heroin within 500 feet of a public housing facility. (SMF ¶ 4). Webster was sentenced to ten years' imprisonment, with five-year parole ineligibility. (*Id.* ¶ 5). Webster moved for a new trial and acquittal, but both motions were denied on March

---

[1] The Court distills these facts from Defendants' Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment (D.E. No. 53-2, ("SMF")) and exhibits accompanying the parties' submissions. Unless otherwise noted, these background facts are undisputed.

22, 2013. (*Id.* ¶ 6; D.E. No. 53-8, Order at 2). Indeed, the same day, the Court granted the State's motion to impose an extended term of imprisonment. (SMF ¶ 7; D.E. No. 53-9, Order at 2).

On February 25, 2013, Webster filed the instant § 1983 Complaint against the Officers, alleging slander, false arrest, unreasonable search, excessive force, fabrication of evidence, and violations of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights. (D.E. No. 1, ("Compl.") at 1). Specifically, Webster claims the Officers (i) used "excessive force" against him for "no reason" by abusing their authority and that they "beat[,] kick[ed,] and punch[ed him] and [his] back, face and ribs with animalistic mentality . . . while witnesses stood and watch[ed]"; (ii) were "taunting" him prior to the incident, "slandering his character," and using "derogatory statements"; and (iii) violated his Fourth Amendment rights because they had "no reason" to search him and planted "drug narcotics on [him]." (*Id.* at 4-5). Webster petitions the Court to "discipline these officers" because they have abused their authority. (*Id.* at 6).

Following the conclusion of fact discovery, the Officers moved for summary judgment on all but Webster's excessive-force and fabrication-of-evidence claims. (D.E. No. 53-1, ("Def. Mov. Br.")). Webster submitted two letters in response to the Officer's motion. (D.E. No. 54, ("Pl.'s First Letter"); D.E. No. 55, ("Pl.'s Second Letter")).[2] This matter is now ripe for resolution.

## II. STANDARDS OF REVIEW

### A. Summary Judgment Standard

Summary judgment is appropriate if the moving party shows that there is "no genuine issue of any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return

---

[2] The Court will treat Webster's letters as his opposition to the Officers' motion and will construe the letters and Complaint liberally in light of Webster's *pro se* status. *See Cuevas v. Wells Fargo Bank, N.A.*, 643 F. App'x 124, 125 (3d Cir. 2016) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

3

a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[3] A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The burden is on the moving party to show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the movant meets this burden, the non-movant must then set forth specific facts that demonstrate the existence of a genuine issue for trial. *Id.* at 324; *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010).

Conversely, where the moving party bears the burden of proof at trial, it "must show that it has produced enough evidence to support the findings of fact necessary to win." *El v. Se. Pa. Transp. Auth. (SEPTA)*, 479 F.3d 232, 237 (3d Cir. 2007). "Put another way, it is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *Id.* at 238.

Notably, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Swain v. City of Vineland*, 457 F. App'x 107, 109 (3d Cir. 2012) (stating that the non-moving party must support its claim "by more than a mere scintilla of evidence").

---

[3] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

### B. Section 1983 Actions

Plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim under § 1983, Plaintiff must allege (i) the violation of a right secured by the Constitution or laws of the United States; and (ii) that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### III. DISCUSSION

The Officers move for summary judgment on all but Webster's excessive-force and fabrication-of-evidence claims. (Def. Mov. Br. at 2). In support of their motion, they contend that Webster failed to sufficiently plead violations of his First, Fifth, Eighth, and Fourteenth Amendment rights. (*Id.*). They further argue that Webster's claims for false arrest and unreasonable search and seizure are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). (*Id.*). As to any alleged slander claim for statements made prior to trial, the Officers argue that such claim is time barred. (*Id.*). And if Webster's slander claim is premised on the Officers' statements at trial, the Officers aver that they are immune from liability for their trial testimony. (*Id.*).

### A. Webster's First Amendment Claim

Webster alleges that the Officers violated his First Amendment rights, though he does not specify how. (Compl. at 4-5). A liberal reading of the Complaint suggests that Webster may claim

5

the Officers retaliated against him for practicing his religion. (*See, e.g.*, *id.* at 5 ("Hilburn told me As-Salamu Alikum that motherfucker."); *see also* Pl.'s First Letter at 2 ("[W]hy should I be call [sic] to account for someone else['s] actions and deeds because I am Muslim.")).

The First Amendment provides, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. To establish a First Amendment retaliation claim, Webster must prove three elements: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Koren v. Noonan*, 586 F. App'x 885, 887-88 (3d Cir. 2014).

Here, Webster's Complaint fails to satisfy any of the elements necessary to establish a First Amendment retaliation claim. Moreover, the record is devoid of materials from which a fact-finder could find that the Officers violated Webster's First Amendment rights. Indeed, the Complaint does not allege—and the record does not demonstrate—that Webster was engaged in any constitutionally protected activity at the time of his arrest or that his arrest was in any way linked to the constitutionally protected activity. Webster alleges only that the Officers were "taunting" him (Compl. at 4), but does not state or suggest that the taunting was a result of (or otherwise linked to) his constitutionally protected activity. And despite this Court's liberal interpretation, Webster's submissions in opposition to the Officers' motion also do not set forth any facts that would establish a genuine issue for trial. The Officers are therefore entitled to summary judgment on Webster's First Amendment claim.

## B. Webster's Fourth Amendment Claim

Webster next asserts that the Officers "deprived [him] of [his] liberty" and had "no reason to search [him]." (Compl. at 5). The Officers interpret these allegations as claims for "false arrest" and "unreasonable search" under the Fourth Amendment,[4] which they argue "must be dismissed under *Heck* because they implicate the invalidity of the conviction." (Def. Mov. Br. at 10). The Court agrees.

In *Heck*, the Supreme Court held that:

> to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, . . . declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 486-87 (emphasis in original).[5]

---

[4] The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[5] *Heck* applies to § 1983 actions seeking either monetary damages or declaratory relief. *See Edwards v. Balisok*, 520 U.S. 641, 643 (1997).

### i. *False Arrest*

Webster alleges that the Officers deprived him of his liberty, which the Officers and this Court will treat as an allegation of false arrest. "The tort of false arrest consists of: (1) an arrest or detention of the person against his will; (2) which is done without proper legal authority or legal justification. If a judgment for [the plaintiff] on his false arrest claim 'would necessarily imply the invalidity of his conviction,' [the plaintiff] would be barred from bringing his cause of action until his conviction was overturned . . . ." *Gibson v. Superintendent of NJ Dep't of Law & Pub. Safety-Div. of State Police*, 411 F.3d 427, 451 (3d Cir. 2005) (citing *Heck*, 512 U.S. at 487). To determine whether a successful § 1983 action would undermine the validity of a conviction, a district court must make a fact-based inquiry. *Id.* ("[U]nder *Heck*, a district court is required only to make a threshold determination as to whether a plaintiff's § 1983 claim, *if successful*, would have the hypothetical effect of rendering the criminal conviction or sentence invalid. If this threshold is satisfied, the district court's analysis is at an end, and the *Heck* deferred accrual rule is triggered.") (emphasis in original).

The Court finds that Webster's false-arrest allegation necessarily implies the invalidity of his conviction because if the arrest was not legal, then his conviction is not valid. *See, e.g.*, *Wiley v. City of Chicago*, 361 F.3d 994, 997 (7th Cir. 2004) (false arrest claim based on allegations that police planted drugs on plaintiff "would necessarily challenge the legality of a prosecution premised on the planted drugs"); *Covington v. City of New York*, 171 F.3d 117, 123 (2d Cir. 1999) ("[I]n a case where the only evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence"). And the law is clear: Webster cannot maintain a false arrest claim if

judgment in his favor "would necessarily imply the invalidity of his conviction." *Heck*, 512 U.S. at 487; *Gibson*, 411 F.3d at 451.

Viewing the evidence in the light most favorable to Webster, the Court will assume that his arrest was effectuated without proper legal authority or legal justification (i.e., without probable cause), as required by the Fourth Amendment. *See Dunaway v. New York*, 442 U.S. 200, 213 (1979) (noting the "general rule that Fourth Amendment seizures are 'reasonable' only if based on probable cause"). If this were true, then all evidence obtained from the search incident to the unlawful arrest (i.e., the heroin Webster was convicted of possessing) is excludable. *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963) (holding that the Fourth Amendment exclusionary rule applies to evidence obtained following an illegal arrest); *United States v. Myers*, 308 F.3d 251, 265-66 (3d Cir. 2002) (finding that because police officers lacked probable cause to arrest the defendant, "the evidence that was seized pursuant to that arrest should have been suppressed").

Webster was convicted of possessing narcotics discovered during a search incident to arrest. (Investigation Report at 3-4; SMF ¶ 2; D.E. No. 53-6, Verdict Sheet at 2-3). Thus, a success on his § 1983 claim for false arrest—which would lead to the suppression of evidence found during the search incident to arrest—would "necessarily imply" that he was improperly convicted. As the Third Circuit has noted, "situations such as [Webster's]—where the only evidence supporting the conviction is tainted by a possible constitutional violation that is the subject of a § 1983 action—are perhaps the quintessential example of when the *Heck* deferred accrual rule is triggered." *Gibson*, 411 F.3d at 452 (citing *Covington*, 171 F.3d at 123 ("On the other hand, in a case where the *only* evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that

9

evidence.") (emphasis in original)). In other words, Webster is "barred from bringing this cause of action until his conviction [is] overturned." *Gibson*, 411 F.3d at 451.

Given that Webster's conviction remains valid,[6] the Court finds that summary judgment in favor of the Officers is appropriate on this claim. Webster's false arrest claim is dismissed *without prejudice*.[7]

### ii.  Unreasonable Search

Webster also alleges that he was subject to an unreasonable search in violation of his Fourth Amendment rights. (Compl. at 5). The search was conducted "incident to arrest." (Investigation Report at 3). The Officers contend that this claim is also barred by *Heck*, because if this claim were successful, it too would undermine the validity of Webster's conviction. (Def. Mov. Br. at 11-12).

The Fourth Amendment protects people from "unreasonable governmental intrusion" wherever there is a "reasonable expectation of privacy." *Terry v. Ohio*, 392 U.S. 1, 9 (1968). Generally, police officers must obtain warrants for searches and seizures. *Id.* But a well-recognized exception to the warrant requirement is a search incident to arrest: "a police officer who makes a lawful arrest may conduct a warrantless search of the arrestee's person and the area 'within his immediate control.'" *Davis v. United States*, 564 U.S. 229, 232 (2011) (citing *Chimel v. California*, 395 U.S. 752, 762-63 (1969)).[8]

---

[6]   Webster concedes that his conviction was not overturned. (Pl.'s First Letter at 2 ("Defense counsel is right about one thing my [conviction] was not overturned . . . .")). The Court also notes that Webster's efforts to challenge his conviction were unsuccessful; he moved for a new trial and acquittal, but both motions were denied. (SMF ¶ 6; D.E. No. 53-8, Order at 2).

[7]   *See Coulston v. Superintendent Houtzdale SCI*, 651 F. App'x 139, 143 (3d Cir. 2016) ("We stress that the claims denied on *Heck* grounds are without prejudice."); *Fottler v. United States*, 73 F.3d 1064, 1065-66 (10th Cir. 1996) (noting that *Heck* dismissals are without prejudice).

[8]   *See also United States v. Robinson*, 414 U.S. 218, 235 (1973) ("It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person

Here, the Court has already determined that Webster's false-arrest allegation is barred by *Heck* because it necessarily implies the invalidity of his conviction. Because Webster's challenge to his arrest is barred by *Heck* and because the Officers searched Webster incident to that arrest, Webster's unreasonable-search claim necessarily fails for the same reason. Accordingly, the Court will also grant the Officers' motion on this claim. Like his false-arrest claim, Webster's unreasonable-search claim is also dismissed *without prejudice. See Coulston*, 651 F. App'x at 143.[9]

**C. Webster's Fifth Amendment Claim**

Webster further avers that the Officers violated his Fifth Amendment rights, but again fails to provide any additional details. (Compl. at 4-5). He only states that the Officers "deprived me of my Liberty." (*Id.* at 5).

The Fifth Amendment provides, in part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. Significantly, "the due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials." *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d

---

is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.").

[9] To be sure, the Court notes that Webster's unreasonable-search claim would also necessarily imply the invalidity of his conviction. The Supreme Court has held that "the exclusionary sanction applies to any 'fruits' of a constitutional violation," including "physical material actually seized in an illegal search." *United States v. Crews*, 445 U.S. 463, 470 (1980). Conducting a fact-based inquiry as required by *Gibson* and viewing the evidence in the light most favorable to Webster, the Court will assume that the Officers' search was unreasonable. If that were the case, then the narcotics found in his possession would be suppressed, and Webster's conviction—which is predicated on his possession of those narcotics—would therefore be invalid. In *Heck*, the Court noted that "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." 512 U.S. at 487 n.7. The Court reasoned that "[b]ecause of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." *Id.* (emphasis in original). Nothing in the record here, however, suggests that the evidence (if suppressed as a result of an unreasonable search) would nevertheless be admitted because of doctrines like independent source, inevitable discovery, or harmless error. Accordingly, Webster's unreasonable-search claim is also barred by *Heck*.

Cir. 2009) (citing *Riley v. Camp*, 130 F.3d 958, 972 n.19 (11th Cir. 1997) ("The Fifth Amendment obviously does not apply here—the acts complained of were committed by state rather than federal officials.")).

In this case, it is undisputed that the Officers, as employees of the Jersey City Police Department, are not federal officials. (SMF ¶ 12; Investigation Report at 2-4). The Fifth Amendment—which only protects against federal governmental action—is thus inapplicable here, and Webster's Fifth Amendment claim against the Officers fails as a matter of law. Accordingly, the Court grants the Officers' motion for summary judgment on this claim.

### D. Webster's Eighth Amendment Claim

Webster then contends that the Officers violated his Eighth Amendment rights.[10] (Compl. at 4-5). The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Notably, the cruel-and-unusual-punishment clause of the Eighth Amendment applies only to post-conviction sentencing and punishments. *Ingraham v. Wright*, 430 U.S. 651, 664 (1977) ("An examination of the history of the [Eighth] Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes."). The clause serves three functions: (i) "it limits the kinds of punishment that can be imposed on those convicted of crimes"; (ii) "it proscribes punishment

---

[10] In support of this claim, Webster alleges that "they used excessive force against me for no reason." (Compl. at 4-5). The Court notes that "excessive force claims arising out of an arrest are analyzed under the Fourth Amendment." *Brown v. Rinehart*, 325 F. App'x 47, 50 n.1 (3d Cir. 2009) (citing *Graham v. Connor,* 490 U.S. 386, 388 (1989). The Eighth Amendment, on the other hand, "serves as the primary source of protection against excessive force for claims that arise *after* conviction." *Id.* (emphasis in original) (citing *Graham,* 490 U.S. at 395 n.10). Moreover, Webster's excessive-force claim is not presently before the Court, as it is excluded from the Officers' motion. (*See* Def. Mov. Br. at 2 ("Defendants move for summary judgment on all but Plaintiff's excessive force claim.")). The Court will nevertheless address any other possible claims Webster may have under the Eighth Amendment.

12

grossly disproportionate to the severity of the crime" and (iii) "it imposes substantive limits on what can be made criminal and punished as such." *Id.* at 667.

Webster's allegations, however, stem from the Officers' actions (i.e., excessive force) during his arrest, not excessive post-conviction sentencing or punishments. (*See generally* Compl.). Put differently, the Eighth Amendment has no application here. *See Ingraham*, 430 U.S. at 664. Indeed, Webster's requested relief has nothing to do with his post-conviction sentence; rather, he asks this Court "to discipline these officers." (Compl. at 6). For that reason, the Officers are entitled to summary judgment on this claim.

### E. Webster's Fourteenth Amendment Claim

Webster next argues that the Officers violated his rights under the Due Process Clause of the Fourteenth Amendment (Compl. at 4-5), which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws," U.S. Const. amend. XIV. A liberal reading of the Complaint suggests that Webster may be asserting that the Officers violated his substantive due process rights by "planting drug narcotics on [him]" and by exercising "excessive force against [him] for no reason." (Compl. at 4-5).

#### *i. Fabrication of Evidence*

As to Webster's Fourteenth Amendment claim based on fabrication of evidence (i.e., that the Officers planted narcotics on him), the Third Circuit has held that there can be "a stand-alone Fourteenth Amendment claim predicated on the fabrication of evidence." *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014) ("[I]f a defendant has been convicted at a trial at which the prosecution has used fabricated evidence, the defendant has a stand-alone claim under section 1983 based on the Fourteenth Amendment if there is a reasonable likelihood that, without the use of that

13

evidence, the defendant would not have been convicted."); *see also Ebuzor-Onayemi v. Union Cty. Police Dep't*, No. 16-1869, 2017 WL 1377640, at *3 (D.N.J. Apr. 12, 2017) ("In the Third Circuit, fabrication-of-evidence is a freestanding constitutional tort."). Here, the Officers have not moved for summary judgment on Webster's claim based on his fabrication-of-evidence allegation. Because this issue is not presently before the Court, Webster's claim that the Officers violated his substantive due process rights by "planting drug narcotics on [him]" (Compl. at 4) survives.[11]

### ii. Excessive Force

The Court finds that Webster's Fourteenth Amendment claim based on his excessive-force allegation, on the other hand, must be dismissed. The Supreme Court has held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). The Court has further instructed that excessive-force claims arising in the context of an arrest "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."). To the extent Webster asserts a substantive due process

---

[11] It is unclear whether the Officers intended to include this claim as part of their argument that Webster's claims under "§ 1983 must fail because they challenge the constitutionality of his conviction." (*See* Def. Mov. Br. at 9-12). If that is the case, the Officers are free to seek leave to file a subsequent motion for summary judgment on Webster's fabrication-of-evidence claim.

14

claim based on the Officers' excessive force during his arrest, the Court will grant the Officers' motion, as that claim must be analyzed under the Fourth Amendment.[12]

In sum, Webster's Fourteenth Amendment claim based on fabrication of evidence survives, but the Court grants the Officers' motion on Webster's Fourteenth Amendment claim based on excessive force during his arrest.

**F. Webster's Slander Claim**

Webster finally alleges that the Officers slandered his character. (Compl. at 3-4). It is unclear from the Complaint whether Webster's slander claim arises from the Officers' accusations at the time of the arrest or from the Officers' testimony at trial. So, the Court will analyze both scenarios.

*i. Officers' Accusations During Webster's Arrest*

The Officers contend that Webster's slander claim (if based on accusations during his arrest) is time-barred and must be dismissed as a matter of law. (Def. Mov. Br. at 12). The Court agrees.

In New Jersey, "[e]very action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander." N.J. Stat. Ann. § 2A:14-3; *see also Johnson v. Peralta*, 599 F. App'x 430, 432 n.1 (3d Cir. 2015) (noting "one-year limitation on libel or slander"). Here, Webster was arrested on April 22, 2011 (Incident Report at 2), and initiated this lawsuit on February 25, 2013 (Compl.)—i.e., over one year and ten months after his arrest. Webster's slander claim arising from his arrest was filed after the expiration of the one-year statute of limitations and must be dismissed *with prejudice*.[13]

---

[12] Because the Officers did not move on Webster's excessive-force claim, that claim survives under the Fourth Amendment.

[13] *See Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 112 (3d Cir. 2013) (affirming dismissal with prejudice due to expiration of statute of limitations); *Goodwater v. Camden Cty. Corr. Fac.*, No. 16-6995, 2017 WL 1528681, at *3

### ii. *Officers' Testimony During Webster's Trial*

To the extent Webster's slander claim is premised on the Officers' testimony during his trial, the Officers aver that they are immune from liability and Webster's claim must be dismissed. (Def. Mov. Br. at 12-13). Again, the Court agrees.

The common law has historically "provided absolute immunity from subsequent damages liability for all persons—governmental or otherwise—who were integral parts of the judicial process." *Briscoe v. LaHue*, 460 U.S. 325, 335-36 (1983). Such immunity extends to police officers who testify as witnesses at trial. *Id.* ("Nothing in the language of [§ 1983] suggests that such a witness belongs in a narrow, special category lacking protection against damages suits.");[14] *see also Franks v. Temple Univ.*, 514 F. App'x 117, 122 (3d Cir. 2013) (holding that "a witness, including a police officer, has absolute immunity with respect to *any* claim based on the witness' testimony"). Here, the Officers testified as witnesses for the State at Webster's trial. (Def. Mov. Br. at 13). They are therefore immune from any claim based on their testimony. Accordingly, the Court will grant the Officers' motion for summary judgment on this claim.

## IV. CONCLUSION

For these reasons, the Court GRANTS-in-part the Officers' motion for summary judgment. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

(D.N.J. Apr. 25, 2017) (dismissing with prejudice § 1983 plaintiff's defamation claim due to expiration of the one-year statute of limitations).

[14] The Court reasoned that "a police officer on the witness stand performs the same functions as any other witness; he is subject to compulsory process, takes an oath, responds to questions on direct examination and cross-examination, and may be prosecuted subsequently for perjury." *Id.* at 342. It further cautioned that "[s]ubjecting government officials, such as police officers, to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties." *Id.*